PETRIE *v.* SPOONER.

Opinion delivered July 12, 1920.

1. FRAUDS, STATUTE OF—ALTERATION OF PLANS OF BUILDING.—Where a vendor agreed to sell a lot of land and to build a house thereon approximately in value of $8,500, according to plans to be subsequently approved by the purchaser, together with ten per cent. of the cost added thereto, the written contract was not conclusive of the plans, and the statute of frauds does not apply to the building contract, nor prevent the recovery of an additional sum on account of alterations in the plans.

2. APPEAL AND ERROR—HARMLESS ERROR—REMARK OF COURT.—In an action for the price of a lot and house agreed to be erected thereon, a remark of the court that the house was a very expensive one for the purchaser not to have anything to say about the painting was harmless where the undisputed evidence was that the plans required the house to be painted.

Appeal from Clay Circuit Court, Eastern District; *R. H. Dudley,* Judge; affirmed.

*Huddleston, Fuhr & Futrell,* for appellant.

1. An examination of the pleadings and evidence shows that appellee elected to stand on the express terms of the written contract sued on. He had two remedies, (1) to sue on the contract as though it was in full force and effect and recover for the breach thereof, or (2) to rescind the contract and sue on a *quantam meruit* for his services and the amount expended by him on the con-

tract. He elected the former, and can not recover on the latter, as the remedies are inconsistent. 3 Elliott on Cont., § 2097; 55 S. W. 476; 129 *Id.* 232; 3 *Id.* 207; 64 *Id.* 213; 86 *Id.* 452; 93 *Id.* 62. If appellant has paid the payments contemplated by the contract, or more than that, then there can be no recovery. 1 Cyc. 740; 65 N. W. 143. There is no evidence that the terms of the contract were ever modified or changed, and a verdict should have been directed for defendant on this theory, as appellant has paid all the payments contemplated by the contract and there could be no recovery.

2. The contract sued on was within the fourth section of the statute of frauds, being a contract for the sale of an interest in real property. Agreements like this can not be orally varied. Bishop on Cont., § 771; 76 S. W. 535; 9 Wall. 254; 22 Howard 28.

3. It was error for the court to make the remarks it did in reference to the testimony. They were prejudicial, and for that error the judgment should be reversed.

SMITH, J. On April 6, 1918, appellant Petrie and appellee Spooner entered into a written contract whereby Spooner undertook to build a house for Petrie. Spooner owned a lot in Ann Arbor, Michigan, and contracted to sell it to Petrie for $4,500. The house was to be built on this lot, and the contract provided that Spooner should build a house "approximately in value of the sum of $8,500 according to plans to be duly approved by the said party of the second part, the amount payable to the said party of the first part to be all costs, charges and expenses in connection with the cost of building said house and garage, together with ten per cent. of the cost thereof added thereto."

Another paragraph of the contract provided that upon the completion of the house and garage the total amount remaining due on the purchase price of said lot should be added to the cost of construction, and that upon the completion of the building a warranty deed should be given Petrie. The contract acknowledged a cash payment of $1,300, and provided that the balance

should be paid in equal monthly installments of $100 per month beginning September 1, 1916, together with interest on the balance due at the rate of six per cent., payable semi-annually. The contract contained other provisions which it is unnecessary to set out.

Just what the specific plans for the building were is not very clear from the testimony. Spooner testified that full and complete plans were furnished and approved; while Petrie testified that the only plans furnished consisted of sketches showing floor plans, sides of house, roof, mantels, windows and doors, and that no plans were ever approved.

The testimony of Spooner was to the effect that numerous changes and additions were made during the construction of the building, and that these changes and additions were made at the suggestion of Petrie and with his approval. This was denied by Petrie.

The house was not ready for occupancy until January 1, 1917, and was not entirely completed until August or September, 1917. On June 14, 1916, seventy days after the execution of the contract, Spooner placed a mortgage for $7,000 on the property in favor of the Ann Arbor Savings Bank, and later placed a second mortgage on the property in favor of Barker Bros. for $1,357. A disagreement arose between the parties over the delay in completing the building and over certain details of construction, and finally, according to Petrie, they had an adjustment of their differences whereby he made Spooner an additional cash payment of $500 and assumed the payment of the two mortgages, and received from Spooner a warranty deed dated April 3, 1917, and reciting payment in full of the purchase money. Spooner denied that the sum paid and the indebtedness assumed at the time of the delivery of the deed constituted full payment of the purchase price, but says this constituted only a partial payment, and that it was not then known what sum would be finally due, and portions of the indebtedness sued for were incurred after the delivery of the deed.

On February 14, 1919, Spooner instituted this suit, and alleged that Petrie was indebted to him in the sum of $10,430 for labor, material and services as shown by an itemized account attached to the complaint. Thereafter Petrie filed a motion to require Spooner to elect whether he would prosecute his cause of action on the express contract or on a *quantum meruit*. The motion was sustained, and Spooner amended his complaint to recite that he relied upon the express contract. There was a trial before a jury and a verdict and judgment in favor of Spooner for $10,000, and Petrie has prosecuted this appeal.

It is the contention of Petrie that as Spooner elected to sue upon the express contract, and that as the undisputed testimony shows a payment by him to Spooner of $11,006.25 prior to the institution of the suit, a verdict should have been directed in his favor. Petrie further contends that as the contract sued on was one for the sale and conveyance of real estate, and, therefore, within the statute of frauds, no items could be recovered which do not come strictly within the terms of the contract, and that there could be no recovery for items which were the result of negotiations entered into after the execution of the written contract; and further that under the terms of the contract the cost of the building could not be increased to any appreciable extent over $8,500, plus ten per cent., and that any substantial increase in cost above this constituted a separate and independent contract, and not being in writing no recovery can be had in this action.

Petrie asked a number of instructions which declared the law in accordance with his contention, and saved numerous exceptions to the admission of testimony showing the cost of the building to be in excess of the original contract price. Upon the same theory the contention is made that, as the contract calls for the payment of $100 per month and interest, and inasmuch as the undisputed testimony shows that the payments made largely exceed those required by the contract, suit can not be maintained to enforce the collection of payments which have not ma-

tured. A decision of these questions substantially disposes of the case.

Petrie invokes the doctrine of cases holding that a written contract falling within the statute of frauds can not be varied by any subsequent agreement of the parties unless such new agreement is also in writing, and that, therefore, he can not be held for alterations of or additions to the plans. In answer to this insistence, however, it may be said that the writing evidencing the contract to sell the land does not prescribe what the plans of the building shall be. Upon the contrary, it expressly recites the fact to be that the plans had not then been prepared but were to be subsequently prepared and approved; so that this written contract can not be conclusive of the plans according to which the building was to be constructed, and the statute of frauds does not apply to the building contract. It was not essential that there be a written contract approving the plans for the building, and it was, therefore, permissible for the parties to modify or alter these plans without evidencing that modification or alteration in writing.

The settlement which Petrie claims was made was not made pursuant to the terms of the written contract, and if it were true that an executory contract for alterations and additions to the building would not have been valid because it was not in writing, it is also true that the contract has been performed and that there has been a delivery of the building in the construction of which the disputed items were a part, and a deed **conveying the** property was executed and delivered.

Under the instructions given by the court the jury could not have found for Spooner without finding that he had correctly stated the facts in regard to the increased cost of the building; and we think his testimony made a case for the jury to decide whether Petrie had authorized the items resulting in the increased cost.

What we have just said disposes of Petrie's contention that the sum already paid by him exceeds the payments due under the original written contract, as it is

quite apparent that this payment was not made under that contract, but pursuant to some subsequent agreement.

Upon the direct examination of Mr. Spooner he was asked to tell what the painting was to cost, and the question was objected to unless the answer was shown by the plans. The witness stated that the plans did not include the painting, whereupon counsel for Petrie objected to the witness answering the question at all. The court overruled the objection and in doing so said: "This is a mighty expensive house, not to have anything to say about painting." It is now insisted that this remark was a comment upon the weight of the testimony, and that the judgment should be reversed on that account. The remark should not have been made, but we think making it did not constitute reversible error. This is true because the written contract did not purport to cover the plans, and, although none of the plans may have covered the painting, it is true that this was a beautiful modern home, and it is not denied that the plans agreed upon, although plans may not have been reduced to writing, required the painting of the house, and if the remark of the court be construed as a statement that the plans required the painting of the house, no prejudice resulted, because that fact is undisputed.

An objection is urged to another remark made by the court; but the record does not appear to support the objection.

No prejudicial error appearing, the judgment is affirmed.